# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE CONCEPCION,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>Defendants. | **Case No. 1:18-cv-01743-LJO-JLT (PC)**<br><br>**FIRST SCREENING ORDER**<br><br>**(Doc. 1, 4)**<br><br>**21-DAY DEADLINE** |

The plaintiff alleges he has been denied sex reassignment surgery to correct his body to reflect his male gender. As plead, his claims are not cognizable: three of the Defendants he names are immune from suit; he fails to link the other two to his allegations; and he fails to show the treatment he is receiving amounts to deliberate indifference to a serious medical need. However, the Court grants Plaintiff leave to file an amended complaint to provide him the opportunity to plead a cognizable claim.

**A.** **Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary

relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). A complaint must be dismissed if it lacks a cognizable legal theory or fails to allege sufficient facts under a cognizable legal theory. *See Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).

### B. Summary of Plaintiff's Complaint

Plaintiff was diagnosed with gender dysphoria for which he has received hormone replacement therapy for over five years. Despite this, prison officials have denied Plaintiff's requests for sex reassignment surgery (SRS). Plaintiff names California Department of Corrections and Rehabilitation, California Correctional Health Care Services (CCHCS), CDCR Secretary Ralph Diaz, Federal Receiver J. Clark Kelso, Deputy Medical Executive of Utilization Management Committee Jeffrey Carrick, and Does 1-50 as Defendants. Plaintiff seeks injunctive relief requiring he be provided SRS, a declaratory finding that CDCR's treatment for gender dysphoria is unconstitutional, and "such other relief as the court finds appropriate in the interest of justice."

Plaintiff desires to proceed on claims that his rights under the Eighth Amendment for care and treatment of his serious medical needs have been violated and that the policies and procedures that have denied him SRS violate the Equal Protection Clause. As discussed below, Plaintiff's claims are not cognizable. However, he may be able to correct the deficiencies in his pleading. Thus, the Court provides him with the pleading requirements and the standards for claims for the rights he asserts have been violated.

### C. Pleading Requirements

#### 1. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, (as are the majority of Plaintiff's allegations here) do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555. Factual allegations are accepted as true, but legal conclusions are not. *Iqbal,* at 678; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557.

While "plaintiffs [now] face a higher burden of pleadings facts . . . ," *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), the pleadings of *pro se* prisoners are still construed liberally and are afforded the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989), "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982), and courts are not required to indulge unwarranted inferences, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Moss*, 572 F.3d at 969. Plaintiff must identify specific facts supporting the existence of substantively plausible claims for relief, *Johnson v. City of Shelby*, __ U.S. __, 135 S.Ct. 346, 347 (2014) (per curiam) (citation omitted).

If he chooses to file an amended complaint, Plaintiff should make it as concise as possible. He should state which of his constitutional rights he feels were violated by each Defendant and the factual basis for each claim. Where the allegations against two or more Defendants are factually intertwined, Plaintiff need not repeat the factual allegations separately against each Defendant. Rather, Plaintiff should present his factual allegations and identify the Defendants he feels are thereby implicated.

3

### 2. Linkage and Causation

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir 2009); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights elsewhere conferred." *Crowley v. Nevada ex rel. Nevada Sec'y of State*, 678 F.3d 730, 734 (9th Cir. 2012) (citing *Graham v. Connor*, 490 U.S. 386, 393-94 (1989)) (internal quotation marks omitted). To state a claim, Plaintiff must allege facts demonstrating the existence of a link, or causal connection, between each defendant's actions or omissions and a violation of his federal rights. *Lemire v. California Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013); *Starr v. Baca*, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

Plaintiff fails to specifically link any of the named individual Defendants to his factual allegations. Generic identifiers, without surname specificity such as "Defendants" or "the Defendants" which Plaintiff utilizes, do not suffice to place any defendant on notice of a plaintiff's claims to be able prepare a defense. *McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996). Plaintiff's allegations must demonstrate that each individual defendant personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678-79; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. *Hebbe*, 627 F.3d at 342. But the mere possibility of misconduct falls short of meeting this plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

### 3. Immunities

#### a. Federal Receiver

J. Clark Kelso is the Federally Appointed Receiver for CDCR's health care system. *See Plata v. Schwarzenegger*, et al., C01-1351-TEH (N.D. Cal. Jan. 23, 2008). Upon his appointment

4

in 2008, "[t]he Receiver and his staff [were granted] the status of officers and agents of [the Plata Court], and as such [were] vested with the same immunities as vest with [the Plata] Court." *Id*. Those judicial immunities extend to immunity from suit. *See Pierson v. Ray*, 286 U.S. 547, 553-54 (1967) ("Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction ...."); *see also Coleman v. Schwarzenegger*, 2007 WL 4276554 (E.D. Cal. Nov.29, 2007) (holding that a receiver who was "imbued with the power and authority to act in the name of the Court as the Court's officer" and who "acts as a 'surrogate' of the court" had quasi judicial immunity). "[J]udicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). There are two primary exceptions to the absolute judicial immunity: first, where the judge's action is "not taken in the judge's judicial capacity"; and second, where the judge's action, "though judicial in nature, is taken in the complete absence of all jurisdiction." *See id*. at 11–12.

Plaintiff has sued Kelso as "the appointed federal receiver." (Doc. 1 at 3.) Seemingly, Plaintiff claims that Kelso has acted in some undescribed manner which has resulted in the denial of SRS. Plaintiff, thus, asserts that Kelso failed to act properly in his role as Receiver. There is no allegation that Kelso acted "in the complete absence of all jurisdiction." Based thereon, the Court finds that Kelso is entitled to quasi-judicial immunity and suit may not be maintained against him.[1]

### b. Eleventh Amendment

Plaintiff names the CDCR and CCHCS as defendants. Plaintiff may not sustain an action against either the CDCR or a division thereof for money damages. The Eleventh Amendment prohibits federal courts from hearing suits for money damages against a state without its consent.

---

[1] To the extent Plaintiff attempts to amend his complaint to allege that Kelso was aware of plaintiff's medical needs and failed to act upon that knowledge, the Court finds that those allegations would similarly entitle Kelso to absolute quasi-judicial immunity because plaintiff would again be alleging that Kelso failed to act within his capacity as the Receiver of CDCR's health care system.

*Aholelei v. Dept. of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). This bars suits against state agencies as well as those where the state itself is named as a defendant. *See Natural Resources Defense Council v. California Dep't of Tranp.*, 96 F.3d 420, 421 (9th Cir. 1996); *Brooks v. Sulphur Springs Valley Elec. Co.*, 951 F.2d 1050, 1053 (9th Cir. 1991); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (concluding that Nevada Department of Prisons was a state agency entitled to Eleventh Amendment immunity); *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201 (9th Cir. 1989). "Though its language might suggest otherwise, the Eleventh Amendment has long been construed to extend to suits brought against a state by its own citizens, as well as by citizens of other states." *Brooks*, 951 F.2d at 1053 (citations omitted). "The Eleventh Amendment's jurisdictional bar covers suits naming state agencies and departments as defendants, and applies whether the relief is legal or equitable in nature." *Id.* (citation omitted). Because the CDCR is a state agency and the CCHCS is a part of the CDCR, both are immune to monetary damages for Plaintiff's claims under the Eleventh Amendment.

**4. Official vs. Personal Capacity Suit**

The Eleventh Amendment bars suits for money damages in federal court against state officials in their official capacity. *Aholelei*, 488 F.3d at 1147. However, it does not bar official capacity suit for prospective relief, *Wolfson v. Brammer*, 616 F.3d 1045, 1065-66 (9th Cir. 2010); nor does it bar suit for damages against state officials in their personal capacities. *Hafer v. Melo*, 502 U.S. 21, 30 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

"Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer*, 502 U.S. at 25; *Suever v. Connell*, 579 F.3d 1047, 1060-61 (9th Cir. 2009). Where a plaintiff is seeking damages against a state official and the complaint is silent as to capacity, a personal capacity suit is presumed given the bar against an official capacity suit. *Shoshone-Bannock Tribes v. Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994); *Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1991).

In his complaint, Plaintiff does not clearly state whether Secretary Diaz and Deputy Carrick are sued in their personal or official capacities. To the extent that Plaintiff's request for "such other relief as the court finds appropriate in the interest of justice" might be construed to

6

seek money damages, a personal capacity suit would be presumed. However, since it appears that the predominant relief Plaintiff seeks is prospective, official capacity claims would be allowed. Thus, Plaintiff must clarify the capacity in which he seeks to sue state officials named as Defendants.

### D. Claims for Relief

#### 1. Eighth Amendment -- Serious Medical Needs

In Claim I, Plaintiff alleges that denial of SRS has denied him medically necessary treatment for his severe pain caused by gender dysphoria, which has been "worsened by the negative physical side effects of his prescribed HRT (hormone replacement therapy)." (Doc. 1, p. 3.) Plaintiff alleges that he was diagnosed with gender dysphoria in 2013, for which he has been receiving HRT for over five years now, but HRT has not provided significant relief to treat his symptoms. (*Id.*, p. 4.) To the contrary, Plaintiff alleges that he continues to experience severe mental anguish, worsened by incorrect dosages of HRT that have caused adverse physical side effects such as increased breast size, onset and worsened symptoms of menses, and stunted desirable side effects like facial hair growth, redistribution of body fat, and muscle development. (*Id.*, pp. 4, 7.) Plaintiff alleges that Defendants' denial of SRS limits his treatment to only HRT. (*Id.*, p. 7.) Plaintiff alleges that HRT alone is insufficient and puts him at risk of "certain cancers related to high doses of testosterone, exacerbates his Hepatitis C, and to relapse in self-harming behavior." (*Id.*) Plaintiff states that he "has a long-documented history of substance abuse that is largely related to his severe gender dysphoria symptoms." (*Id.*) Plaintiff alleges that these circumstances have violated his rights under the Eighth Amendment. (*Id.*)

Deliberate indifference to the serious medical needs of an inmate is "cruel and unusual punishment" under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976). To demonstrate deliberate indifference, "plaintiffs must show that [prison officials] were (a) subjectively aware of the serious medical need and (b) failed to adequately respond." *Conn v. City of Reno*, 591 F.3d 1081, 1096 (9th Cir. 2010), vacated, ––– U.S. ––––, 131 S.Ct. 1812, (2011), reinstated in relevant part, 658 F.3d 897 (9th Cir. 2011).

Assuming the medical need is "serious," a plaintiff must show that the defendant acted with deliberate indifference to that need. *Estell v. Gambel*, 429 U.S. 97, 104 (1976). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). It entails something more than medical malpractice or even gross negligence. *Id*. Deliberate indifference exists when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted).

Critically, "a difference of opinion between a physician and the prisoner -- or between medical professionals -- concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), overruled on other grounds by *Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014). Instead, to establish deliberate indifference in the context of a difference of opinion between a physician and the prisoner or between medical providers, the prisoner "'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" *Id*. at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In other words, where there has been some arguably appropriate treatment, deliberate indifference cannot be established merely by showing disagreement with the physician; rather, it requires showing that the defendant chose a course of treatment knowing that it was inappropriate.

An inmate challenging denial of treatment must allege that the denial "was medically unacceptable under the circumstances" and made "in conscious disregard of an excessive risk to [the inmate]'s health." *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). For the purposes of litigation in one case, the

State of California conceded that gender dysphoria equates to a serious medical need. *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 n.2 (9th Cir. 2015) (per curiam). The Ninth Circuit has held that a blanket denial of hormone replacement therapy and/or SRS equates to deliberate indifference. *Id.*, at 1039-1040 (citing *Colwell v. Bannister*, 763 F.3d 1060, 1063 (9th Cir. 2014) (holding that the "blanket, categorical denial of medically indicated surgery solely on the basis of an administrative policy that one eye is good enough for prison inmates is the paradigm of deliberate indifference" (internal quotation marks omitted)). Courts of Appeals appear to agree that neither hormone therapy nor any other particular treatment is required to treat gender dysphoria, but that a per se administrative rule barring a particular treatment constitute deliberate indifference where such treatment may be appropriate. *See, e.g., Mitchell v. Kallas*, 895 F.3d 492, 501 (7th Cir. 2018); *Kosilek v. Spencer*, 774 F.3d 63, 91 (1st Cir. 2014) (en banc); *Fields v. Smith*, 653 F.3d 550, 554-59 (7th Cir. 2011); *De'lonta v. Johnson*, 708 F.3d 520, 525-27 (4th Cir. 2013); *Brown v. Zavaras*, 63 F.3d 967, 970 (10th Cir. 1995).

To the contrary, Plaintiff alleges that he has been receiving HRT for over five years and it appears that there is a process for consideration for SRS on a case by case basis. Specifically, in response to findings and recommendations to dismiss this action based on Plaintiff's failure to exhaust available administrative remedies, (Doc. 4), Plaintiff produced a copy of the determination by the Headquarters Utilization Management Committee (HQUMC) and Sex Reassignment Surgery Review Committee (SRSRC) considering and denying Plaintiff's request for SRS, (Doc. 8, p. 4).[2] In that determination, the "HUMC considered the extent to which the proposed service would protect life or pose a risk to life, and to what extent activities of daily living would be facilitated or impaired by [SRS]. The SRSC has determined that the current treatments for gender dysphoria provided to [Plaintiff] . . . provides significant relief that is adequate and sufficient for her condition." (*Id.*) Plaintiff's allegations do not show there is a medical basis requiring SRS or that the treatment he is receiving is insufficient. Succinctly put,

---

[2] This determination was made under California Code of Regulations, Title 15, Section 3350.1 et seq. which provides that "[t]he HQUMC decision is the final step in the review process for SRS requests. No further actions are necessary nor is further exhaustion of internal appeal processes required as a condition to legal action by the patient." Accordingly, the Findings and Recommendations to dismiss (Doc. 4) will be withdrawn.

9

Plaintiff's desire for a treatment different from that which he is receiving is insufficient to state a cognizable claim under the Eighth Amendment. Th disagreement with a defendant's professional judgment concerning the medical care that is most appropriate under the circumstances—which is all that Plaintiff's allegations show—is insufficient to state a cognizable claim under the Eighth Amendment. *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016).

### 2. Equal Protection - Discrimination

In Claim II, Plaintiff alleges that CDCR and CCHCS policies are discriminatory to transgender prisoners seeking SRS for treatment of gender dysphoria since they are required "to undergo more onerous process than one required of cisgender prisoners seeking the same procedures (e.g. mastectomy, hysterectomy, ovariectomy, vaginectomy)." (Doc. 1, p. 4.) Plaintiff generally alleges that "Defendants applied their policies in a manner that discriminated against Plaintiff on the basis of his gender and transgender status" and "based their conclusion on criteria they would not have considered for cisgender prisoners seeking medically necessary surgery. Defendants regarded and applied CDCR and CCHCS policy to require more onerous standards, which consider factors other than whether the treatment is medically necessary, solely because Plaintiff was assigned female at birth, but is a transgender man." (*Id.*, at p. 5.) Plaintiff again alleges that he continues to experience severe mental anguish, worsened by incorrect dosages of HRT that cause adverse physical side effects such as increased breast size, onset and worsened symptoms of menses, and stunted desirable side effects like facial hair growth, redistribution of body fat, and muscle development. (*Id.*, p. 8.) Plaintiff alleges that Defendants' denial of SRS limits his treatment to only HRT and that HRT alone is insufficient and puts him at risk of "certain cancers related to high doses of testosterone, exacerbates his Hepatitis C, and to relapse in self-harming behavior." (*Id.*) Plaintiff again states that he "has a long-documented history of substance abuse that is largely related to his severe gender dysphoria symptoms." (*Id.*) Plaintiff alleges that these circumstances have violated his rights to equal protection the Fourteenth Amendment. (*Id.*)

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439(1985); *Hartmann v.*

*California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). To state a claim, Plaintiff must show that Defendants intentionally discriminated against him based on his membership in a protected class. *Hartmann*, 707 F.3d at 1123; *Furnace*, 705 F.3d at 1030; *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005); *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001).

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601-02 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *San Antonio School District v. Rodriguez*, 411 U.S. 1 (1972); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008), *see also Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir.2004); *Sea River Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002). To sow a denial of equal protection, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Village of Willowbrook*, 528 U.S. at 564. Further, to establish a violation of the Equal Protection Clause, the prisoner must present evidence of discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239-240 (1976); *Serrano*, 345 F.3d at 1081-82; *Freeman v. Arpio*, 125 F.3d 732, 737 (9th Cir. 1997).

Plaintiff does not state a cognizable Equal Protection claim. Though the medication he is receiving provides him undesirable side effects, his doctors must be aware of this but still have found that SRS is not medically warranted. His allegations emphasize his strong desire for the surgery, but do not show more than disagreement with the treatment he is being provided—which is not cognizable. A woman seeking the same surgeries he is seeking (e.g. mastectomy, hysterectomy, ovariectomy, vaginectomy) also would have to demonstrate that they were medically necessary. Thus, he has not shown he is being treated differently from others similarly

situated.

### 3. **Supervisory Liability**

It appears that Plaintiff named Secretary Diaz and Deputy Carrick as defendants merely because they hold a supervisorial position. Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 677.

"'[B]are assertions . . . amount[ing] to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim,' for the purposes of ruling on a motion to dismiss [and thus also for screening purposes], are not entitled to an assumption of truth." *Moss*, 572 F.3d at 969 (quoting *Iqbal*, 556 U.S. at 1951 (quoting *Twombly*, 550 U.S. at 555)). "Such allegations are not to be discounted because they are 'unrealistic or nonsensical,' but rather because they do nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation." *Id.* Thus, any allegations that Secretary Diaz and Deputy Carrick, are somehow liable solely based on the acts of those under their supervision does not state a cognizable claim.

### II. **CONCLUSION**

For the reasons set forth above, Plaintiff fails to state a cognizable claim in the Complaint.

The Court grants him 21 days to file an amended complaint to cure the deficiencies identified in this order. If Plaintiff no longer wishes to pursue this action, he may file a notice of voluntary dismissal.

In an amended complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227 (9th Cir. 1980). It must allege in specific terms how each named defendant is involved. There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. *Rizzo v. Goode*, 423 U.S. 362 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

An amended complaint should be brief. Fed. R. Civ. P. 8(a). Such a short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. 127, 555 (2007) (citations omitted).

Plaintiff is further advised that an amended complaint supercedes the original, *Lacey v. Maricopa County*, Nos. 09-15806, 09-15703, 2012 WL 3711591, at *1 n.1 (9th Cir. Aug. 29, 2012) (en banc), and must be "complete in itself without reference to the prior or superceded pleading." Local Rule 220.

The Court provides Plaintiff with opportunity to amend to cure the deficiencies identified by the Court in this order. *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in an amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Based on the foregoing, the Court **ORDERS**:

1. The Findings and Recommendations to dismiss this action based on Plaintiff's failure to exhaust available administrative remedies prior to filing suit, issued on February 4, 2019 (Doc. 4), is **WITHDRAWN**;

13

2. Plaintiff is granted leave to file a first amended complaint;
3. The Clerk's Office shall send Plaintiff a civil rights complaint form; and
4. **Within 21 days** from the date of service of this order, Plaintiff must file a first amended complaint curing the deficiencies identified by the Court in this order or a notice of voluntary dismissal.

**If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order and for failure to state a claim**.

IT IS SO ORDERED.

Dated: __**April 2, 2019**__ _____**/s/ Jennifer L. Thurston**_
UNITED STATES MAGISTRATE JUDGE